No. 24-1806

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

Emmanuel Walker,
*Plaintiff/Appellant,*

v.

State of Arizona, et al.,
*Defendant/Appellees,*

---

Appeal from the United States District Court for the District of Arizona
District Court No. 22-1401-PHX-DWL-ESW
The Honorable Dominic W. Lanza

---

### APPELLANT'S OPENING BRIEF

---

Lincoln Combs, Esq. – Arizona Bar #025080
Matthew P. MacLeod, Esq. – Arizona Bar #022573
**O'STEEN & HARRISON, PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424
(602) 252-8888
(602) 274-1209 FAX
lcombs@vanosteen.com
mmacleod@vanosteen.com

Attorneys for Plaintiff/Appellant

i

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT…………………………………………………...1

STATEMENT OF ISSUES PRESENTED…………………………………………2

STATEMENT OF THE CASE…………………………………………………...3

STATEMENT OF FACTS………………….…………………………………6

SUMMARY OF ARGUMENT…………………………………………………11

ARGUMENT…………………………………………………………14

    I.      The standard of review for all issues is de novo……………………………14

    II.     Under the plain language of A.R.S. § 36-504, while he was at ASH Isaac was a patient undergoing treatment and entitled to the rights afforded mental health patients under Arizona law …………………………………………...14

    III.    The regulations protecting SMI patients in Arizona apply to patients committed to ASH under the criminal code as well …………………………………...19

    IV.    The State has itself conceded – through the conduct, communications, and testimony of its agents and officers-that the protections and procedures in Title 36, Chapter 5, Article 2 applied to Isaac…………………………………21

CONCLUSION…………………………………………………………….27

STATEMENT OF RELATED CASES……………………………………………28

CERTIFICATE OF COMPLIANCE……………………………………………29

CERTIFICATE OF SERVICE……………………………………………30

## **TABLE OF AUTHORITIES**

**Cases**

*Arnold v. Arizona Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989) 18

*Daniels-Hall v. Nat'l Educ. Ass*, 629 F.3d 992, 998-99 (9th Cir. 2010) 25

*Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) 17

*In re MH2010-0026337*, 228 Ariz. 74, 80-81, 263 P.3d 82, 88-89 (App. 2011) 20

*Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1135-36 (D.C. Cir. App. 2001) 28

*Lubrizol Corp. v. Exxon Corp.*, 632 F. Supp. 326, 329 (S.D. Tex. 1986) 24

*Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984) 24

*Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998) 17

*Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) 17

*United States v. United States Bd. of Water Comm'rs*, 893 F.3d 578, 597 (9th Cir. 2018) 28

**Statutes**

A.R.S. § 13-3992 20

A.R.S. § 13-3994 21

A.R.S. § 13-502 passim

A.R.S. § 31-232 21

A.R.S. § 31-235 21

A.R.S. § 36-506 23

A.R.S. § 36-507 21

A.R.S. § 36-512 21

A.R.S. § 36-514 21

A.R.S. § 36-516 12, 14, 18

A.R.S. §§ 36-511 21

**Other Authorities**

AAC R9-21-101 11, 23

AAC R9-21-201 14, 22, 23

AAC R9-21-204 passim

AAC R9-21-401 26

AAC R9-21-407 28

**Rules**

Fed. R. Evid. 201 25

## JURISDICTIONAL STATEMENT

Appellant/Plaintiff Emmanuel Walker's Complaint is an action brought under 42 U.S.C. § 1983 and Arizona law against the State of Arizona and Arizona state government officials for violations of real-party-in-interest Isaac Contreras's civil and constitutional rights. Actions under § 1983 involve questions of federal law such that the district court had jurisdiction of this matter under 28 U.S.C. § 1331. The district court granted the Appellees'/Defendants' motion for partial judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P., on February 14, 2024. The parties then stipulated to dismissal of the remaining claims, and Appellant/Plaintiff filed a timely notice of appeal on March 21, 2024. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Does a patient who is designated seriously mentally ill under Arizona law and committed to the Arizona State Hospital for treatment under Arizona's guilty except insane statute, A.R.S. § 13-502, have the rights provided in Title 36, Chapter 5 of the Arizona Revised Statutes?

2. Do sections of the Arizona Administrative Code enacted to establish the rights and remedies of persons designated seriously mentally ill pursuant to Title 36, Chapter 5 of the Arizona Revised Statutes apply to individuals adjudicated guilty except insane and committed to the Arizona State Hospital for treatment?

3. Should the federal courts defer to an Arizona state agency's determination that sections of the Arizona Administrative Code enacted pursuant to Title 36, Chapter 5 of the Arizona Revised Statutes apply to individuals designated seriously mentally ill, adjudicated as guilty except insane, and committed to the Arizona State Hospital for treatment?

## STATEMENT OF THE CASE

This appeal arises out of the placement of real-party-in-interest Isaac Contreras in an isolation cell at the Arizona State Hospital for 665 days in violation of his rights under federal and Arizona law from July 17, 2020, to May 12, 2022. Appellant/Plaintiff Emmanuel Walker was appointed by the Maricopa County Superior Court as Isaac's Guardian on May 5, 2022, and brings this claim on Isaac's behalf. Defendants are the State of Arizona and various Arizona Department of Health and Arizona State Hospital (ASH) officials involved or charged with Isaac's care while he was at ASH. Appellees/Defendants are hereinafter referred to as "the State," collectively.

Isaac has a lifelong history of severe mental illness. In 2015, he was arrested and charged with aggravated assault after a psychotic episode. He was found to be not competent, with treatment was restored to competency, and then adjudicated Guilty Except Insane. After being found insane, Isaac was committed to ASH for restorative psychiatric treatment rather than sentenced to prison because of his mental illness. The sentencing judge's concern about Isaac's psychiatric frailty and need for treatment instead of punishment is demonstrated in the commitment order to ASH, which precluded ASH from ever sending Isaac to prison.

Due to a lack of appropriate treatment while at ASH, Isaac had occasional outbursts of anger and violence, mainly involving property destruction. In response, rather than responding therapeutically, ASH placed Isaac in solitary confinement under the rubric of a new "policy" euphemistically titled "Administrative Separation." For almost two years, Isaac was completely isolated from all other ASH patients and his treatment team in a

3

windowless room behind two locked doors. He could only communicate with the outside world through a small glass window in a door. The State's actions violated Arizona law as defined in Title 36, Chapter 5 of the Arizona Revised Statutes as well as the corresponding Arizona Administrative Code sections regulating the provision of mental healthcare in Arizona. After he was released from the custody of ASH in May 2022, Isaac's Guardian filed suit against the State in July 2022.

Following fact witness discovery, the State filed a Motion for Partial Judgment on the Pleadings on July 7, 2023, asking for a ruling that the protections for mental health patients found in Title 36, Chapter 5 of the A.R.S. and the parallel provisions in the A.A.C. did not apply to Isaac as a matter of law because he had been committed to ASH under the criminal code in Title 13 of the A.R.S. and not civilly committed under Title 36. The State did not cite to a statute or regulation that supports their position that a seriously mentally ill Forensic hospital patient at ASH is not entitled to the rights and protections set by the Arizona Legislature and the Arizona Department of Health Services for the treatment of seriously mentally ill patients at ASH just because the patient was committed to treatment at ASH under the criminal code. Instead, the State relied on a tortured interpretation of the statutes and regulations at issue to justify its wholesale violation of Isaac's rights. Nothing in those statutes and regulations limits their scope to only civilly committed ASH patients, nor would such an interpretation make sense as it would mean that there were no statutes or regulations whatsoever governing the commitment of Forensic hospital patients to ASH. Moreover, the State of Arizona itself, through the conduct of and rules governing ASH and the legal opinion of the Arizona Health Care Cost Containment System (AHCCCS)—the

4

agency which adjudicates grievance appeals for mental health patients in Arizona—disagrees with the self-serving statutory arguments it now advances in this litigation.

After completed briefing from both sides but without oral argument, on February 14, 2024, the district court granted the motion and awarded judgment to Appellees/Defendants on Count III of the Complaint. The parties stipulated to dismissal of the remaining causes of action to facilitate an immediate appeal, and this appeal timely followed.

## STATEMENT OF FACTS

Isaac Contreras was born into an impoverished family in Yuma, Arizona, and his childhood was filled with trauma, abandonment, and abuse, including years of sexual abuse by a violent, older man.[1] By adolescence, Isaac suffered mental illness and was unable to remain in school beyond the eighth grade.[2] At age 15, Isaac killed the man who was sexually abusing him, and as a result was sentenced to the Arizona Department of Corrections from August 16, 2000, until May 25, 2010.[3]

After release from prison, Isaac struggled to assimilate into the community due to his untreated and evolving mental illnesses.[4] In May of 2015, Isaac was arrested for aggravated assault during the midst of a psychotic episode.[5] He was deemed not competent to stand trial on the aggravated assault charge.[6] After successful treatment and completing the restoration to competency program, Isaac was adjudicated Guilty Except Insane ("GEI") pursuant to A.R.S. § 13-502.[7] A GEI adjudication rests on a judicial determination that Isaac was "afflicted with a mental disease or defect of such severity that he did not know his criminal act was wrong."[8] Pursuant to the Court's finding that Isaac was GEI,

---

[1] ER-22, ¶ 20
[2] ER-23, ¶ 21
[3] ER-23, ¶ 22
[4] ER-23, ¶ 23
[5] ER-23, ¶ 23
[6] ER-23, ¶ 24
[7] ER-23, ¶ 25
[8] ER-23, ¶ 26

and pursuant to A.R.S. §13-3992(A), Isaac was committed to ASH for restorative psychiatric treatment as a "Forensic hospital patient" in 2016.[9]

Isaac had previously been designated Seriously Mentally Ill ("SMI") as defined in Arizona law in 2010.[10] He had long suffered multiple qualifying and disabling diagnoses, including bi-polar disorder, psychotic disorder, personality disorder, schizoaffective disorder, schizophrenia, and post-traumatic stress disorder, and Isaac thus qualified as functionally impaired in each of the four domains required for designation as SMI.[11] This determination afforded Isaac rights and protections under Arizona law, including those enumerated in Title 36, Chapter 5 of the Arizona Revised Statutes and Chapter 21 of the Arizona Administrative Code.

Those rights and protections were afforded to Isaac at ASH up until he was placed in Seclusion Room A-340 at the Saguaro Unit at ASH in July of 2020.[12] ASH labeled Isaac's solitary imprisonment in a concrete cell as "Administrative Separation."[13] He remained there until May 12, 2022.[14] PSOF ¶ 13. For 665 days, Isaac lived behind a series

---

[9] The Court can take judicial notice that ASH contains "three separately licensed healthcare facilities": a Civil hospital, a Forensic hospital, and a separate specialized facility for sex offenders. *See* Ariz. Dep't of Health Svcs., Ariz. State Hospital Annual Report 2023, *available at* https://www.azdhs.gov/documents/director/agency-reports/fy2023-ash-annual-report.pdf (last accessed June 6, 2024) [hereinafter "Annual Report"], at 4. ASH characterizes the patients committed to its Forensic hospital pursuant to the criminal code as "Forensic hospital patients." *Id.* at 2.

[10] ER-24, ¶ 28

[11] ER-24, ¶ 31

[12] ER-26, ¶ 40

[13] ER-26, ¶ 40

[14] ER-26, ¶ 40

of three locked steel doors that confined him to a small area consisting only of a bedroom (with a concrete slab as a bed) and a bathroom accessed via a short hallway.[15]

Locking Isaac in a small room for almost two years was "seclusion" under Arizona law. "Seclusion" is defined in the regulations governing Arizona behavioral healthcare providers including ASH as "restricting a client to a room or area through the use of a locked door or any other device or method which precludes a client from freely exiting the room or area or which a client reasonably believes precludes his unrestricted exit." AAC R9-21-101. Defendant Katherine Woods, the former Chief Medical Officer for ASH, conceded in her deposition that Isaac was in seclusion as defined in the Arizona Administrative Code:

Q.  So Mr. Contreras was in the seclusion room at ASH, correct?

A. Without the door closed.

Q. Okay. But he was behind a closed door, correct?

A. But not the one to the seclusion room.

Q.  Okay. Going back to the definition of seclusion in the Arizona Administrative Code --

A. Uh-huh.

Q. -- if you could read for me that first sentence, seclusion means again.
 "Seclusion means restricting a client to a room or area through the use of locked doors or any other device or method which precludes a client from freely exiting the room or area or which a client reasonably - reasonably believes precludes his unrestricted exit."

Q. Okay. And that applied to Mr. Contreras, correct?

---

[15] ER-26-27, ¶¶ 40-42

A. He was contained in an area.

Q. Okay. A locked area?

A. A locked area.

Q. Okay. And he couldn't leave, correct, from the locked area?

A. He could not without staff.

Q. So at least according to this definition Mr. Contreras' admin separation applied to the definition of seclusion, correct?

A    If we're only isolating to this one definition.[16]

During the *almost two years* Isaac was in seclusion, ASH comprehensively violated AAC R9-21-204, the Code provision describing when behavioral healthcare facilities like ASH can practice "Restraint and Seclusion." Section 204 requires, among other things, that seclusion be limited to *three hours* at a time, AAC R9-21-204(I)(4), and that the patient be personally examined every *15 minutes* to ensure their "general comfort and safety," AAC R9-21-204(P)(1). Locking an SMI patient in a concrete room for years at a time resulted in hundreds of thousands of violations of Isaac's civil rights under Section 204, and each violation is assessed a $1,000 penalty under A.R.S. § 36-516 ("Any knowing violation of a person's rights under this article shall give him a cause of action for the greater of either one thousand dollars or three times the actual amount of damages."). The monetary penalties afforded victims of improper seclusion under Arizona law is the legal recognition that isolation in solitary confinement damages human beings. All humans are negatively

---

[16] ER-45-46

9

affected by this kind of extended isolation and mistreatment, but for those with severe mental illness and a trauma-filled background the effects are horrendous and long-lasting.

To avoid liability for their obvious and hideously egregious violations of Isaac's civil rights and the potentially millions of dollars in liability exposure created by those violations, the State can only argue that the statutory and regulatory protections afforded to patients at ASH did not apply to Isaac and he was entitled to *no* due process or protection from abuse at the hands of the ASH providers and administrators. This is wrong both legally and factually as explained herein.

## SUMMARY OF ARGUMENT

Nothing in Arizona law states that forensic patients like Isaac Contreras lose all the rights and protections granted SMI patients when they are committed to a facility for treatment under the criminal code. In fact, Arizona law says the opposite: "Every person undergoing treatment or evaluation pursuant to this chapter is entitled to the rights set forth in this chapter and to rights that the director specifies by rule." A.R.S. § 36-504. Title 36, Chapter 5 of the Arizona Revised Statutes broadly encompasses not only civil commitment procedures but also general definitions and powers and duties of mental health administrators in Arizona. Article 2, "Patient's Civil and Legal Rights," is only one section. The legislative intent, as expressed in the plain language of the statutes in Chapter 5 is that *all* mentally ill patients receiving inpatient treatment be protected from abuse.

The rights afforded patients in Chapter 5, Article 2 include restrictions on restraints and seclusion, and punishments and civil liability on facilities that violate SMI patients' statutory rights. *See* A.R.S. § 36-513 ("Seclusion; restraint; treatment), § 36-516 ("Violation of person's rights"). The parallel Arizona Administrative Code provisions referenced in § 36-504 also apply to forensic patients at ASH and go even further into detail on what facilities like ASH cannot do when patients are under in their custody. *See* AAC R9-21-201, *et seq*. These rules also applied to Isaac as a patient getting treatment at ASH, regardless of how he arrived there.

To rebut this straightforward interpretation of the statutes in Chapter 5, the State argues for a tortured interpretation that because *some* rights in Chapter 5, Article 2 would not apply to Forensic hospital patients at ASH, then *none* of the rights apply. Nothing in

the statutes actually so states, and it is far more reasonable to find that if a statute in Article 2 generally addressing mental health patients actually conflicts with a provision of the criminal code or prison regulations, than the latter controls in the specific case of a patient committed to ASH under the criminal code. To hold otherwise creates the absurd result that at the same facility under the same administration, one set of patients enjoys a comprehensive set of rights and protections while the other set has *no rights at all*. There is no parallel set of rights and protections in Arizona's criminal code or regulations, and there is no rational public policy goal served by excluding Forensic hospital patients from the protections established in Title 36, Chapter 5.

Grafting a "forensic patient exception" onto the mental health patient civil rights and protections is even more absurd when viewed in the context of the State of Arizona's own statements and conduct prior to litigation. ASH's own rules and regulations apply equally to its Civil and Forensic hospitals and categorically prohibit the use of seclusion and restraints other than in emergency situations where the patient poses a danger to themselves or others. And in its Annual Report, ASH promotes that both Civil *and Forensic* patients are afforded the administrative process for grievances and appeals described in the relevant statutes and Code provisions which the State now argues Isaac was excluded from. In fact, for the first few years of his time in ASH custody, ASH followed all of the rules, laws, and regulations as to Isaac it now claims he was not included in. And when it stopped following those protections and observing Isaac's civil rights, another state agency with superior authority overruled ASH's rogue opinion that it didn't have to afford Forensic hospital patients those rights and protections. The Court

should follow what the State actually does and says in practice rather than what it says the law is in this case

The Arizona Legislature could have stated that only civilly committed patients are protected by Arizona's statutes affording SMI patients civil rights. But it did not do so. Courts cannot read such exceptions into the relevant statutes' language, and should accept those statutes' plain meaning, which was meant to protect Isaac from exactly the horrific abuse he suffered while under ASH's care.

The district court's order granting judgment on Count III of the Complaint should be vacated and this matter should be remanded for further discovery and further pretrial proceedings.

**ARGUMENT**

**I.    The standard of review for all issues is de novo.**

In the Ninth Circuit, decisions granting judgment on the pleadings are reviewed de novo. *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Judgment on the pleadings is only proper when, after taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998); *Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006).

**II.   Under the plain language of A.R.S. § 36-504, while he was at ASH Isaac was a patient undergoing treatment and entitled to the rights afforded mental health patients under Arizona law.**

Arizona's legislature has enacted multiple statutes—including those in Chapter 5 of Title 36 of the Arizona Revised Statutes—and the State's Executive Branch created an entire Chapter of the Arizona Administrative Code to establish special protections, rights, and mandated services for SMI patients in Arizona.[17] These statutes and regulations have established Arizona as one of the most protective states in the country for SMI patients.[18]

There is a history behind Arizona's provision of a comprehensive set of enforceable rights to the mentally ill. In a 1989 case addressing deficiencies in the provision of healthcare in Arizona, the Arizona Supreme Court held that "[t]he moral test of government is how it treats those who are in the dawn of life, the children; those who are in the twilight of life, the aged; and those who are in the shadows of life, the sick, the needy and the

---

[17] ER-17-18
[18] ER-17-18

handicapped." *Arnold v. Arizona Dep't of Health Servs*., 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989) (internal quotation marks omitted). The Court concluded that Arizona failed to provide services to SMI individuals and mandated sweeping changes in the State's SMI system. *Arnold*, 160 Ariz. at 609, 775 P.2d at 537.

A.R.S. § 36-501, *et seq.*, and AAC Title 9, Chapter 21 were Arizona's policy-making responses to the *Arnold* ruling.[19] Among the protections and rights afforded SMI patients in those laws and regulations are strict rules on the use of restraints and seclusion. A.A.C. R9-21-204 requires, among other things, that seclusion be limited to three hours at a time, A.A.C. R9-21-204(I)(4), and that the patient be personally examined every 15 minutes to ensure their "general comfort and safety," AAC R9-21-204(P)(1). Each violation of that section or any of the other protections in the statutes and regulations governing the provision of treatment to SMI patients in Arizona gives rise to "a cause of action for the greater of either one thousand dollars or three times the actual amount of damages." A.R.S. § 36-516.

The State argued and the district court accepted that Isaac was not entitled to any of these protections for the treatment of SMI patients because he was not civilly committed but rather was a Forensic hospital patient committed to ASH under the criminal code, specifically A.R.S. §§ 13-502(B) and 13-3992(A). The State argued in its motion that all the provisions in Title 36, Chapter 5 are only "civil commitment statutes," as if there were

---

[19] ER-17-18

a different set of "criminal commitment statutes" governing the conditions of the treatment of forensic patients like Isaac.

That is wrong. There are no other laws or rules governing the commitment of forensic patients for inpatient care. And there is nothing in Title 36, Chapter 5 of the A.R.S. or the parallel Code sections that limits their scope to only civilly committed patients. In fact, Title 36, Chapter 5 broadly applies to the provision of inpatient mental health care to *any* patient by *any* mental health provider in Arizona at *any* facility. *See* A.R.S. § 36-501(27) (defining "Mental health provider" as "any physician or provider of mental health or behavioral health services who is involved in evaluating, caring for, treating or rehabilitating a patient"); §36-501(31) (defining "Patient" as "any person who is undergoing examination, evaluation or behavioral or mental health treatment under this chapter").

Article 2 of Chapter 5 (§§ 36-504 to -517.02) is titled and specifically addresses "Patient's Civil and Legal Rights." As with the rest of Title 36, Chapter 5, nothing in Article 2 exempts forensic patients from the protections of those statutes. A.R.S. § 36-504 expressly provides that *all* patients being treated under Title 36, Chapter 5 have the rights and protections in Article 2 as well as the parallel Code regulations:

> A. Every person undergoing treatment or evaluation pursuant to this chapter is entitled to the rights set forth in this chapter and to rights that the director specifies by rule.

A.R.S. § 36-504(A). Isaac and anyone else committed to ASH under the criminal code are indisputably committed there for "treatment": both A.R.S. § 13-502 and § 13-3992 use that

word. The Legislature certainly could have chosen to deny the rights and protections in Article 2 to forensic patients committed to ASH, but it did not.

In Arizona, and likely in all jurisdictions applying fundamental common law interpretation rules, statutes should be interpreted to "effectuate legislative intent, the best evidence of which is the plain language of the statute." *In re MH2010-0026337*, 228 Ariz. 74, 80-81, 263 P.3d 82, 88-89 (App. 2011). The State in its arguments below and the district court in its ruling violated this principle when they essentially grafted an exception onto the plain language of A.R.S. § 36-504 by asserting that Forensic hospital patients committed to ASH or other behavioral health facilities under the criminal code were not "undergoing treatment and evaluation *under this chapter*," i.e., Title 36, Chapter 5. Query then what statutes and regulations *do* govern the commitment of a GEI and SMI patient to ASH? Not the criminal code, which only describes that a forensic commitment can take place but does not create any procedures, set any limits, or establish any protections for patients for such a commitment. Arizona Department of Corrections, Rehabilitation & Reentry (ADCRR) laws, regulations, and rules do not apply to Forensic hospital patients as by law once they are so committed they are no longer in ADCRR custody but rather in the custody of the Arizona Department of Health Services. A.R.S. § 13-3992(E) ("If a person is found guilty except insane pursuant to section 13-502, the department of health services shall assume custody of the person within ten days after receiving the order committing the person pursuant to subsection A of this section."). The simplest, most straightforward harmonization of the commitment statutes in the criminal code with Title 36, Chapter 5 that is most consistent with legislative intent as expressed in the plain

language of those statutes is that once the patient is under the custody of the Department of Health Services through its facility at ASH, then the provisions of Title 36, Chapter 5 apply to those patients just as they do all the other patients at ASH.

To contest this simple logic, the State and the district court highlighted a few provisions in Title 36, Chapter 5, Article 2 that are inconsistent with criminal incarceration, such as establishing patients' rights not to be photographed or fingerprinted without consent, § 36-507; the right to wear the clothing of one's choice, *id.*; and the right to visitation from and confidential communications with outsiders, § 36-514. But since the Forensic hospital patient is concurrently still under the jurisdiction of the superior court while in the custody of the Department of Health, A.R.S. § 13-3994, other laws specifically addressing prisoners would govern those issues when they come in conflict with more general mental health services statutes applicable to all SMI patients. *See, e.g.*, A.R.S. § 31-232 (authorizing ADCRR to establish rules governing visitation of prisoners' family members); § 31-235 (establishing rules for prisoner communications). But the general statutes and rules protecting patients while in ASH custody otherwise apply. Notably, most of those protections do not conflict with laws and regulations for prisoners. *See, e.g.*, A.R.S. §§ 36-511 ("Quality of treatment"), 36-512 ("Emergency medical care"). This includes the limitations and restrictions on seclusion and restraints in both A.R.S. § 36-512 and AAC R9-21-204, discussed further below.

The State also argued below and the district court erroneously found that § 13-3992(B), which provides that an SMI patient committed to a mental health facility for treatment under § 13-3992(A) can under some circumstances also be committed civilly

under Chapter 5, created two "entirely different statutory framework[s]" for civil and forensic commitments. Not so. Subsection B applies to patients who are "entitled to release from confinement," and it makes sense that some SMI patients might need a term of involuntary civil commitment under Title 36, Chapter 5, Article 5 ("Court-Ordered Treatment") after their prison sentence expired. But that has nothing to do with the rights and protections in Article 2 of that Chapter and in the corresponding regulations.

Isaac was a patient at ASH "undergoing examination, evaluation or behavioral or mental health treatment" for his serious mental illness. A.R.S. § 36-501(31). And patients receiving behavioral healthcare at facilities in Arizona including ASH are entitled to the rights and protections in Article 2. A.R.S. § 36-504. That Isaac was sent to ASH custody pursuant to A.R.S. § 13-502(D) is irrelevant. Once he was at ASH getting treatment under their custody, ASH and the Department of Health had to afford him the rights laid out in Title 36, Chapter 5, Article 2. As alleged in the Complaint and which the Court under Rule 12(c), Fed. R. Civ. P. must acknowledge as true for purposes of this appeal, they grossly failed to do so.

## III. The regulations protecting SMI patients in Arizona apply to patients committed to ASH under the criminal code as well.

A.R.S. § 36-504(A) expressly affords SMI patients not only the protections specified by the Legislature in the laws in Article 2, but also the "rights that the director specifies by rule." Those rules are described in AAC R9-21-201, *et seq.*, and parallel the statutory protections for SMI patients:

> Clients shall have all rights accorded by applicable law, including but not limited to those prescribed in A.R.S. §§ 36-504 through 36-517.02. Any

individual or agency providing behavioral health services or community services as defined in R9-21-101 shall not abridge these rights, including . . . Those civil rights set forth in A.R.S. § 36-506 . . . .

AAC R9-21-201(A) ("Civil and Other Legal Rights"). "Client" is defined in R9-21-101 as "an individual who has a qualifying serious mental illness and is being evaluated or treated for a mental disorder by or through a health plan." This includes Isaac while he was at ASH.[20]

While A.R.S. § 36-513 provides statutory limits on the use of restraints and seclusion, the Code at R9-21-204 goes into more detail with specific rules limiting the use by a "mental health agency" of "Restraint and Seclusion" for patients under their care. These are the rules which the State and its agents and officers wholly ignored when they locked Isaac in a small concrete room for 22 months.

The State claims that the limitations and protections on seclusion in AAC R9-21-204 do not apply to Forensic hospital patients at ASH because Section 204(A) limits the application of that Code section to only when the patient is receiving treatment under "this Chapter." But that Chapter, Chapter 21 of Title 9 of the A.A.C., specifically and emphatically establishes that Chapter 21 including Article 2 applies to "all mental health agencies" except the Department of Corrections (now known as ADCRR). AAC R9-21-102. As noted above, Isaac was not in ADCRR custody at the time he was getting treatment at and in the custody of ASH, indisputably a "mental health agency" under this Chapter of the Code.

---

[20] ER-24, ¶¶ 30-32

When Isaac was found GEI and sent to ASH, he fell under the jurisdiction of ASH and the rules, statutes, and regulations that apply to ASH. And that includes the protections from improper seclusion in Arizona mental health facilities in AAC R9-21-204 and the rights granted to the mentally ill in both the Code and A.R.S. Because these protections applied to Isaac, and because the Complaint describes in detail the State's violations of those protections, judgment on the pleadings was mistaken and should be reversed.

**IV.    The State has itself conceded—through its public statements, conduct, and communications—that the protections and procedures in Title 36, Chapter 5 applied to Isaac.**

Either party supporting or opposing a Rule 12 motion can submit documents, testimony, and other evidence beyond the Complaint. Rule 12(d), Fed. R. Civ. P. Appellant/Plaintiff submitted with its response brief in the district court and re-submits here on appeal substantial documents and record evidence refuting the statutory interpretation arguments offered by the State. The Court should consider such materials for purposes of this appeal and, if appropriate, under Rule 56, Fed R. Civ. P., as they are referenced in and incorporated by reference into the Complaint.[21] *Id.*; *see also Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984); *Lubrizol Corp. v. Exxon Corp.*, 632 F. Supp. 326, 329 (S.D. Tex. 1986).

The Court can also take judicial notice of the public statements of ASH as reflected its Medical Staff Rules and Regulations and in its Annual Report, both available online on

---

[21] *See* ER-26, ¶ 38 (referencing State agency finding that ASH violated Isaac's rights and requiring ASH to take corrective action).

the ASH website.[22] Fed. R. Evid. 201; *see also, e.g., Daniels-Hall v. Nat'l Educ. Ass*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information publicly available on government web site). ASH's publicly available documents directly contradict the State's position. In this case, the State argues that Civil and Forensic hospital patients can be treated differently at ASH, with the former receiving the comprehensive rights and protections under Arizona law and the latter receiving no statutory or regulatory protections. But its staff rules and regulations apply globally to both the Civil *and* Forensic Hospital staff equally, with no distinctions.[23] And those rules include a prohibition on the non-emergency use of restraints and seclusion consistent with the rights and protections which it now claims do not apply to Forensic hospital patients

> It is the policy of the Arizona State Hospital that the use of Seclusion or Restraint is limited to emergency situations when a patient poses a likelihood of serious physical harm to self and/or others and other less restrictive alternatives have been attempted and/or were determined to be inadequate to prevent physical harm to self and/or others and/or imminent risk of abscondment when being taken to necessary off-site care.[24]

Further, in its Annual Report, ASH promotes that both Civil and Forensic hospital patients at ASH have access to the same processes for grievances and appeals:

> In accordance with ASH policies, patients and ACPTC residents may file complaints regarding any aspect of their care. ***Civil and Forensic hospital patients*** may file complaints, grievances and appeals with the ASH Office of Complaints, Grievances, and Appeals. Processes to investigate and manage complaint, grievance and appeal cases are outlined in Hospital policy and based on The Joint Commission standards and 9 A.A.C. 21, Behavioral

---

[22] Arizona State Civil and Forensic Hospital Medical Staff Rules And Regulations 2023-2026, *available at* https://www.azdhs.gov/documents/az-state-hospital/governing-board/medical-staff-rules-and-regs.pdf (last accessed June 6, 2024).

[23] *Id.* at 1.

[24] *Id.* at 19, Section IX, "Seclusion and Restraint."

> Health Services for Persons with Serious Mental Illness (of note, A.A.C. R9-21-102 applies to individuals receiving services pursuant to A.R.S. Title 36, Chapter 5. ***ASH applies the same processes for both Civil and Forensic patients***).[25]

The "processes" this passage refers to are those in the same Chapter 5 statutes and Chapter 21 Code provisions that the State now argues do *not* apply to Forensic hospital patients. Chapter 21 of the Code is even specifically mentioned, and it includes R9-21-204 addressing seclusion and restraints (which ASH violated every 15 minutes for 665 days). While the State may try to argue that only *some* of Chapter 21 applies to Forensic hospital patients like Isaac, there is no rational basis much less any legal authority for such an interpretation.

Besides its inconsistent public statements, the State has itself—through the agency governing ASH—taken the opposite position it now advocates. AHCCCS, Arizona's agency implementing federal Medicaid, through its Behavioral Health Grievances and Appeals branch handles appeals from adverse rulings on mental health patient grievances. AAC R9-21-401, *et seq.* Several years before his 665 days in seclusion at ASH from 2020 to 2022, Isaac filed a grievance against ASH on October 23, 2017 alleging that he had been improperly restrained for 20 hours on October 19, 2017.[26] ASH denied the grievance, so Isaac appealed to AHCCCS.[27] This led to a long back-and-forth exchange between ASH administrators and AHCCCS debating the merits of Isaac's grievance and the

---

[25] Annual Report at 28 (emphases added). The Annual Report is publicly available online as described in footnote 9, *supra*.

[26] ER-48-52.

[27] ER-54-57.

applicability of various statutes and regulations.[28] Notably, this entire grievance process, in which both State agencies participated in for several years regarding Isaac, was conducted under Chapter 21 of the Code. The State *now* argues that Chapter 21 does not apply to Isaac when "this Chapter" is referenced in Section 204 addressing seclusion, but "this Chapter" governed all of Isaac's grievance and appeal rights which *two* State agencies explicitly acknowledged both in writing and by following those procedures for his October 2017 grievance.[29]

ASH eventually changed its position and began to argue that Chapter 21 did not apply to Isaac. The ASH administrators began to debate their fellow State of Arizona employees at AHCCCS, advancing the same argument that the State makes in its motion: that because Isaac was a Forensic hospital patient at ASH under criminal court order that Chapter 21 did not apply to him (even as the entire grievance process they were still participating in followed the grievance procedures in Chapter 21). ASH Chief Compliance Officer Margaret McLaughlin at first said it was "questionable" that Chapter 21 applied and later became more explicit that Chapter 21 "does not include Forensic Hospital patients under criminal court order for treatment."[30]

But AHCCCS rejected this interpretation. In its response to ASH and Ms. McLaughlin, it explicitly upheld Isaac's grievance because ASH had violated AAC R9-21-204 in several aspects in regard to the 20-hour October 2017 seclusion and restraint.[31]

---

[28] ER-54-78.
[29] *Id.*
[30] ER-59-60, 69-76.
[31] ER-62-67, 78.

Those violations included many of the same violations of R9-21-204 cited by Isaac in this case, such as failing to use available methods that were less restrictive, Section 204(B); continuing restraint or seclusion longer than 12 hours without a renewed order to do so, Section 204(Q); and failing to personally examine a restrained or secluded patient every 15 minutes, Section 204(P).[32]

The Court should defer to the Arizona statutory and regulatory interpretation determinations of the State of Arizona through its agency, AHCCCS. *United States v. United States Bd. of Water Comm'rs*, 893 F.3d 578, 597 (9th Cir. 2018) (finding "clear error" where district court failed to defer to findings and conclusions of state agencies); *see also McKesson Corp. v. Ariz. Health Care Cost Containment Sys.*, 230 Ariz. 440, 443, 286 P.3d 784, 787 (App. 2012) (noting that an administrative agency's interpretation of statutes and its own regulations is ordinarily entitled to great weight). The contrary interpretation of the ASH administrators was mistaken and the product of rogue officials, as Isaac's successful appeal granted by AHCCCS demonstrates. *See* AAC R9-21-407 (providing that appeal of denial of grievance is made to and decided by AHCCCS). That the State now claims in this case that its own interpretation made by AHCCCS was incorrect to attempt to avoid liability for Isaac's harm is of little weight compared to the interpretation of the administrative body governing mental health patient grievance appeals in Arizona. *See Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1135-36 (D.C. Cir. App. 2001) (holding that IRS's statutory interpretation was not entitled to *Chevron*

---

[32] ER-62-67.

deference when the interpretation was developed in litigation); *accord McKesson Corp.*, 230 Ariz. at 443, 286 P.3d at 787 (noting that an "agency interpretation developed in litigation is not entitled to judicial deference").

Moreover, the State and even ASH itself has acknowledged that A.R.S. Title 36 and AAC Title 9, Chapter 21 applied to Isaac on other occasions. Besides his grievances being governed by Chapter 21 as described above, on other occasions during his time at ASH other than the 665 days at issue in this case and apart from the October 2017 instance which resulted in his sustained grievance, Isaac was placed in seclusion or restraints.[33] During those other seclusion or restraint occasions, ASH completed substantial monitoring paperwork and otherwise made sure it complied with Section 204 protocols, including but not limited to the 15 minute checks.[34] This was appropriate since the rules and regulations for ASH are the same for both Civil and Forensic patients as explained above; it makes sense that the same forms required by Chapter 21 would also be used for both. It was only after ASH placed Isaac in "Administrative Separation" in July 2020—a new policy which appears to have been directed primarily at managing Isaac's behavior specifically—that it took a new legal and compliance position that he was exempt from the protections in Chapter 21 of the Code and Title 36 of the A.R.S. This change in position exposes the lack of good faith in the State's arguments; if the protections and rights afforded mentally ill patients under Arizona's laws and regulations never applied to Isaac, then why did ASH so assiduously work to afford him those rights and protections for most

---

[33] ER-80-102.
[34] *Id.*

of his time there? The answer is that this new legal position was conjured by ASH administrators and counsel after the fact to justify their wholesale violation of Isaac's rights and Arizona law.

## CONCLUSION

Nothing in Arizona law excludes forensic patients from the rights and protections in Title 36, Chapter 5 of the Arizona statutes, which broadly apply to any SMI patient receiving inpatient treatment in Arizona. The statutory interpretation the State argues for in this case is exactly the opposite of what the State says outside of litigation and how it acted for most of Isaac's custody at ASH. In fact, a different State agency overruled ASH's attempts to justify its violation of Isaac's statutory and regulatory rights. The State's interpretation is unreasonable, unsupported by Arizona law and in conflict with its own statements and conduct. Accordingly, Appellee/Plaintiff Walker, on behalf of Isaac Contreras, respectfully requests that the Court reverse the district court's order granting judgment on Count III of the Complaint and remand this matter for further pretrial and trial proceedings.

DATED this 7th day of June, 2024.       O'STEEN & HARRISON, PLC

_____
Lincoln Combs
Matthew P. MacLeod
300 W. Clarendon Ave., Suite 400
Phoenix, Arizona 85013-3424

27

## STATEMENT OF RELATED CASES

Appellee/Plaintiff is unaware of any related cases pending in this Court.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-1806

I am the attorney or self-represented party.

**This brief contains** | 6,762 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Lincoln Combs | **Date** | 6/7/24

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | 29 | *Rev. 12/01/22*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 24-1806

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellant's Opening Brief and Certificate of Compliance

**Signature** | /s/Lincoln Combs          **Date** | Jun 7, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov