No. 24-1806

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**EMMANUEL WALKER, as Guardian of an incapacitated adult on behalf of Isaac Contreras,**

**Plaintiff-Appellant,**

**v.**

**STATE OF ARIZONA, et al.,**

**Defendants-Appellees.**

On Appeal from the United States District Court
for the District of Arizona
2:22-cv-01401-DWL-ESW

### DEFENDANTS/APPELLEES' ANSWERING BRIEF

Georgia A. Staton, Bar No. 004863
Ravi V. Patel, Bar No. 030184
Eileen Dennis GilBride, Bar No. 009220
JONES, SKELTON & HOCHULI P.L.C.
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Facsimile: (602) 651-7599
gstaton@jshfirm.com
rpatel@jshfirm.com
egilbride@jshfirm.com

Attorneys for Defendants-Appellees

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................1

JURISDICTIONAL STATEMENT .....................................3

ISSUE PRESENTED ............................................................4

STATEMENT OF THE CASE ............................................5

SUMMARY OF THE ARGUMENT.................................8

LEGAL ARGUMENT ........................................................10

    I.    STANDARD OF REVIEW ..............................................10

    II.   THE DISTRICT COURT CORRECTLY GRANTED
        DEFENDANTS JUDGMENT ON THE PLEADINGS ...............10

        A.   The civil commitment statutes do not apply to
            criminal commitment. ...........................................10

        B.   Plaintiff's arguments are unavailing..................................14

            1.   The plain language of the civil commitment
                statutes defeats Plaintiff's position. ..........................14

            2.   The word "treatment" does not make
                Plaintiff's case..............................................16

            3.   The word "custody" does not help Plaintiff...........17

        C.   The civil commitment regulations do not apply..............18

            1.   Plaintiff's arguments lack merit. ..............................20

            2.   The regulations do not apply to the State
                Hospital in any event. ..........................................22

      III.  DEFENDANTS HAVE NOT CONCEDED THAT MR.
        CONTRERAS WAS ENTITLED TO CIVIL
        COMMITMENT RIGHTS...............................................23

        A.   Plaintiff waived any argument involving ASH's
            "staff rules and regulations" and Annual Report.............23

        B.   AHCCCS did not officially interpret the regulations
            Plaintiff's way. ..................................................25

i

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

CONCLUSION ........................................................................28

STATUTORY AUTHORITIES............................................29

REGULATORY AUTHORITIES .........................................34

STATEMENT OF RELATED CASES ................................39

CERTIFICATE OF COMPLIANCE ...................................40

CERTIFICATE OF SERVICE .............................................41

ii

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................5

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ..............................................................26

*Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.*,
11 F.4th 1101 (9th Cir. 2021) .............................................26

*Maricopa Cnty. v. Arizona Health Care Cost Containment Sys.*,
179 Ariz. 508 (Ct. App. 1994) ...........................................26

*Scanlon v. Cnty. of Los Angeles*,
92 F.4th 781 (9th Cir. 2024) ..............................................10

*Shepherd v. Costco Wholesale Corp.*,
250 Ariz. 511 (2021) ..........................................................24

*Smartt v. Kijakazi*,
53 F.4th 489 (9th Cir. 2022) ..............................................23

*Turner v. Safley*,
482 U.S. 78 (1987) ..............................................................20

## Statutes

42 U.S.C. § 1396d(a)(30)(A) .................................................21

A.R.S. § 13-502 ...........................................................passim

117370746.1

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

A.R.S. § 13-502(D) ....................................................................................1, 27

A.R.S. § 13–702 ............................................................... 29, 30, 31, 32

A.R.S. § 13–703 ............................................................... 29, 30, 31, 32

A.R.S. § 13–704 ............................................................... 29, 30, 31, 32

A.R.S. § 13–705 ............................................................... 29, 30, 31, 32

A.R.S. § 13–706 ............................................................... 29, 30, 31, 32

A.R.S. § 13–707 ............................................................... 29, 30, 31, 32

A.R.S. § 13–710 ............................................................... 29, 30, 31, 32

A.R.S. § 13–751 ............................................................... 29, 30, 31, 32

A.R.S. § 13-904 ...................................................................................9, 13

A.R.S. § 13–1406 ............................................................. 29, 30, 31, 32

A.R.S. § 13-3890 ................................................................................9, 14

A.R.S. § 13-3992 ................................................................................1, 31

A.R.S. § 13-3994 .......................................................... 27, 29, 30, 32

A.R.S. § 13-3994(K) ...............................................................................6

A.R.S. § 36-501(31) ..............................................................................14

iv

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

A.R.S. § 36-502 ....................................................................22

A.R.S. § 36-502(A) .............................................................23

A.R.S. § 36-503.03 ..............................................................11

A.R.S. § 36-504 ................................................... 19, 33, 34, 36

A.R.S. § 36-504(A) ................................................. 8, 11, 14

A.R.S. § 36-506 ......................................................... 11, 34

A.R.S. § 36-507 ...................................................................12

A.R.S. § 36-507(2) ..............................................................36

A.R.S. § 36-512 ...................................................................36

A.R.S. § 36-513 ......................................................... 12, 33

A.R.S. § 36-514 ...................................................................12

A.R.S. § 36-516 ................................................... 12, 13, 34

A.R.S. § 36-517.02 ............................................ 19, 33, 34, 36

A.R.S. § 36-518 ...................................................................10

A.R.S. § 36-520 ................................................... 12, 13, 33

A.R.S. § 36-521 ...................................................................10

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page**

A.R.S. § 36-524 ...................................................................11

A.R.S. § 36-2901(1)…………………………………………18

A.R.S. § 41-3803 ................................................................23

**Rules**

FRAP 28(a)(6).....................................................................5

FRAP 28(e)..........................................................................5

**Regulatory Authorities**

Arizona Administrative Code

R9-21-101…………………………………………… 20, 34

R9-21-102 .................................................... 8, 18, 20, 34

R9-21-104 through -106 …………………………………….. 23

R9-21-201 .................................................... 2, 19, 20, 34

R9-21-204 .................................................... 1, 2, 18, 37

117370746.1

## INTRODUCTION

In 2017, Isaac Contreras, a person previously designated as Seriously Mentally Ill ("SMI"), was charged with aggravated domestic violence and was adjudged "guilty except insane." [ER-23.] The Yuma County Superior Court sentenced him to incarceration at the Arizona State Hospital pursuant to A.R.S. § 13-502(D), which mandates that persons found guilty but insane shall be "placed and remain under the jurisdiction of the superior court and committed to a secure state mental health facility under the department of health services pursuant to § 13-3992 for the length of that sentence." *See also* A.R.S. § 13-3992(A) ("A person who is found guilty except insane pursuant to § 13-502 shall be committed to a secure mental health facility for a period of treatment.").

In Count Three of the complaint against Defendants Arizona State Hospital and its employees, titled "Statutory Violations and Mandatory Penalties for Illegal Seclusion," Plaintiff Emmanuel Walker, Mr. Contreras's guardian, alleged that Defendants violated a *civil* commitment regulation, Arizona Administrative Code R9-21-204(R), by keeping Mr. Contreras in seclusion from July 17, 2020, to May 12, 2022. [ER-25-26 ¶¶ 33, 37(b); ER-26,

¶ 40; ER-27, ¶¶ 43-45; ER-32-33, ¶¶ 75-79.][1]  That regulation states that SMI individuals shall not be kept in seclusion longer than 12 hours at a time without the medical director's review and approval.

The district court correctly granted Defendants' motion for judgment on the pleadings on this count, ruling that the civil commitment regulation did not apply to Mr. Contreras.  The regulation applies to the use of seclusion "in compliance with this Chapter."  Ariz. Admin. Code R9-21-204(A).  And the words "this Chapter" mean Article 2 of the Arizona Administrative Code, which addresses the rights of SMI individuals who have been civilly committed.  Ariz. Admin. Code § 9-21-201 (referring to the civil commitment statutes).  Because Mr. Contreras was not civilly committed, the regulation on which Plaintiff based Count Three did not apply.  Judgment for Defendants should therefore be affirmed.

---

[1]  Whether Defendants did or did not do so is not at issue here.  The only issue is whether the civil commitment statutes and regulations applied to Plaintiff.

2

## <u>JURISDICTIONAL STATEMENT</u>

Defendants do not disagree with Plaintiff's jurisdictional statement.

117370746.1

## ISSUE PRESENTED

Did the district court properly grant Defendants judgment on the pleadings on Count Three because the civil commitment regulation on which Count Three was based did not apply to Mr. Contreras, who was criminally incarcerated, not civilly committed?

117370746.1

## STATEMENT OF THE CASE

The relevant facts are undisputed, as they are based on the allegations of Plaintiff's complaint.[2]

### A.   Mr. Contreras was criminally incarcerated.

Plaintiff has never disputed that Mr. Contreras was arrested for aggravated assault, adjudicated guilty except insane, and sentenced to the Arizona State Hospital.  [*See* ER 23.]  On April 19, 2017, Mr. Contreras pled guilty except insane to aggravated domestic violence and aggravated assault per domestic violence and was sentenced to concurrent terms of "incarceration under the jurisdiction of the Psychiatric Security Review Board and committed to a secure state mental health facility."  [SER 10-17.][3]

Mr. Contreras was not simply "committed to [the Arizona State Hospital]

---

[2]  Defendants object to Plaintiff's "Statement of the Case" [OB at 3-5] as argumentative and unsupported by any citation to the record in violation of Federal Rules of Appellate Procedure 28(a)(6) and 28(e).  Defendants also object to Plaintiff's "Statement of Facts" [OB at 6-10] as it (a) cites allegations wholly irrelevant to the issue on appeal, (b) is improperly riddled with argument, (c) recites (erroneous) legal conclusions which this Court does not accept as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), and (d) misstates the record.  The misstatements of the record are noted in the text above.

[3]  Defendants asked the district court to take judicial notice of the facts contained in the guilty plea.  [SER-20 n.2.]

for restorative psychiatric treatment." [OB at 7.] The guilty plea states that Mr. Contreras is sentenced to "incarceration under the jurisdiction of the Psychiatry Security Revie Board" and that the "Defendant may be subject to civil commitment upon expiration of the jurisdiction of the psychiatric security review board pursuant to A.R.S. § 13-3994(K)." [SER 15.]

## B. Procedural posture.

The complaint alleged that Mr. Contreras was in seclusion from July 17, 2020, through May 12, 2022 [ER-28] and that Defendants violated certain civil commitment statutes and regulations [ER-32-33].

Defendants moved for partial judgment on the pleadings, relying only on the allegations of Plaintiff's complaint and Plaintiff's plea agreement. [SER-18-25.] Along with his response [Doc. 31], Plaintiff filed a statement of facts [Doc. 32] to which he attached numerous documents [ER-15-102]. Defendants objected that several of Plaintiff's documents were unauthenticated,[4] hearsay,[5] and irrelevant[6] to the legal issue [SER-4-7], and

---

[4] Plaintiff's Exs. 2 through 10 [*see* ER-47-102]

[5] Plaintiff's Exs. 2-10, but at a minimum, Ex. 2 [Doc. 32-1 at 29-32]; Ex. 3 [*id*. at 34]; Ex. 4 [ER-47-52]; Ex. 5 [ER-53-57]; Ex. 7 [ER- 61-67]; Ex. 9 [ER-77-78]; and Ex. 10 [ER-79-102]

[6] Plaintiff's Exs. 2-12 [*see* ER-42-102.]

117370746.1

they asked the district court to exercise its discretion to not consider the extraneous material and to decline to consider Defendants' motion as one for summary judgment [SER-9].

The district court granted Defendants' motion for partial judgment on the pleadings [ER-14], citing only the allegations of Plaintiff's complaint [ER-5-7]. As such, the court did not convert the motion into one for summary judgment. With respect to Plaintiff's documents, the district court—without ruling on Defendants' objections—simply noted that "even assuming this evidence is properly before the Court under Rule 12(c), perhaps under the theory that it was incorporated by reference in the complaint (Doc. 1-4 ¶ 38), it does not change the analysis here." [ER-13.]

117370746.1

## SUMMARY OF THE ARGUMENT

The district court correctly granted Defendants judgment on the pleadings. Plaintiff's entire case is based on the argument that Mr. Contreras was entitled to the rights afforded to civilly committed individuals. But Mr. Contreras was not civilly committed. He was a convicted criminal who was sentenced to serve his incarceration at the Arizona State Hospital.

The civil commitment statutes and regulations did not apply to Mr. Contreras. The civil commitment statutes specify that the "rights set forth in this chapter" apply to "every person undergoing treatment or evaluation *pursuant to this chapter*"—referring to Title 36, Chapter 5 of the Arizona Revised Statutes—the civil commitment statutes. A.R.S. § 36-504(A) (emphasis added). And the civil commitment regulations likewise specify when they apply: *"With regard to the provision of behavioral health services or community services to clients under A.R.S. Title 36 Chapter 5*, this Chapter shall apply to the Administration and to all mental health agencies." Ariz. Admin. Code R9-21-102 ("Applicability") (emphasis added).

Mr. Conteras was not undergoing treatment or evaluation pursuant to either the civil commitment statutes in A.R.S. Title 36, Chapter 5, or pursuant to the Arizona Administrative Code regulations in Title 9, Chapter 21. He

8

was serving a sentence of incarceration pursuant to the criminal code, Arizona Revised Statutes Title 13, the statutes that provide for the criminal commitment of individuals adjudicated to be guilty except insane. Moreover, the panoply of rights afforded to the civilly committed in Title 36, Chapter 5—such as the right to vote, the right to avoid being photographed or fingerprinted, and the right to visit with anyone and to correspond confidentially with anyone—are plainly inconsistent with the hallmarks of criminal incarceration/commitment found in Title 13.  *Cf.* A.R.S. § 13-904 (felony conviction "suspends the following civil rights of the person sentenced: 1. The right to vote. . . 4. . . .any other civil rights the suspension of which is reasonably necessary for the security of the institution in which the person sentenced is confined or for the reasonable protection of the public."); A.R.S. § 13-3890 (arrestees shall be fingerprinted).

The district court therefore properly rejected Plaintiff's claim based on Defendants' alleged violation of the civil commitment statutes and regulations.

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

The Court reviews an order granting judgment on the pleadings *de novo*. *Scanlon v. County of Los Angeles*, 92 F.4th 781, 796 (9th Cir. 2024). Judgment on the pleadings is proper when there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Id*.

### II.   THE DISTRICT COURT CORRECTLY GRANTED DEFENDANTS JUDGMENT ON THE PLEADINGS

#### A.    The civil commitment statutes do not apply to criminal commitment.

The statutory rights to which Plaintiff claims entitlement are embodied in the Arizona Revised Statutes Title 36 ("Public Health and Safety"), Chapter 5 ("Mental Health Services"), Article 2 ("Patient's Civil and Legal Rights"). This portion of the Arizona statutes includes provisions for voluntary and civil court-ordered treatment. For example, these statutes provide for:

-   A person to voluntarily apply for hospitalization. A.R.S. § 36-518;

-   Procedures relating to a petition for court-ordered evaluation. A.R.S. § 36-521;

10

- An application for emergency admission made by a person with knowledge of the facts requiring emergency admission, e.g., a relative, friend, peace officer, admitting officer, or another responsible person.  A.R.S. § 36-524;

- A civil commitment population cap.  A.R.S. § 36-503.03.

These statutes specifically limit the rights associated with civil commitment to those persons being treated under the civil commitment statutes.  Section 36-504(A)—the initial statute titled "Notice of patients' rights"—specifies that the "rights set forth in this chapter" apply to "every person undergoing treatment or evaluation *pursuant to this chapter*" (emphasis added).  "This chapter" is Title 36, Chapter 5—the civil commitment statutes.  Those civil rights include:

- The right to vote.  A.R.S. § 36-506 ("Persons undergoing evaluation or treatment *pursuant to this chapter* shall not be denied any civil right, including but not limited to, the right . . . to vote.") (emphasis added);

- The right to be visited by various individuals; to have reasonable access to telephones between 9:00 a.m. and 9:00 p.m. to make and receive confidential calls; and to be furnished with reasonable

11

amounts of stationery and postage and to be permitted to correspond by mail without censorship with any person. A.R.S. § 36-514 ("Every person detained for evaluation or treatment *pursuant to this chapter* shall have the following additional rights") (emphasis added).

- The right not to be fingerprinted or photographed. A.R.S. § 36-507 ("Every person undergoing evaluation or treatment *pursuant to this chapter*: 1. Has the right not to be fingerprinted. 2. Has the right not to be photographed . . . .") (emphasis added).

Plaintiff argues specifically that one of these civil commitment statutes, A.R.S. § 36-513, gave Mr. Contreras the right to avoid seclusion except in case of an emergency and that another civil commitment statute, A.R.S. § 36-516, entitled him to millions of dollars in damages for the purported violation of the seclusion statute. [OB at 9, 10.] But the seclusion statute, Section 36-513, like the other statutes in this section, begins, "A person undergoing evaluation *pursuant to article 4 of this chapter [Sections 36-520 et seq.]* . . . ." (emphasis added). Sections 36-520 *et seq.* are statutes relating to civil applications for court-ordered evaluations of a person. Even the

12

damages statute on which Plaintiff relies, A.R.S. § 36-516, refers to a knowing violation of a person's rights "under this article."

Mr. Contreras was not committed pursuant to A.R.S. Title 36, Chapter 5, nor was he "undergoing treatment or evaluation pursuant to [A.R.S. §§ 36-520 et seq.]." He was incarcerated pursuant to the criminal code, A.R.S. Title 13, the statutes that provide for the criminal commitment of individuals adjudicated to be guilty except insane ("GEI"). The criminal commitment statutes do not contain any language suggesting that individuals like Mr. Contreras who are criminally committed are entitled to the benefits of civil commitment—such as the right to vote, to not be fingerprinted or photographed, to be visited by various individuals, to make and receive confidential calls, to be furnished with reasonable amounts of stationery and postage, and to correspond by mail with any person without censorship. And these civil commitment statutes are plainly inconsistent with criminal incarceration/commitment. For example, under A.R.S. § 13-904, a felony conviction "suspends the following civil rights of the person sentenced: 1. The right to vote. . . 4. . . . .any other civil rights the suspension of which is reasonably necessary for the security of the institution in which the person

sentenced is confined or for the reasonable protection of the public." Similarly, A.R.S. § 13-3890 requires arrestees to be fingerprinted.

In short, the statutes under which Mr. Contreras was incarcerated at the State Hospital do not provide him with the civil commitment rights that he claims Defendants violated. The district court therefore correctly granted Defendants judgment on the pleadings.

**B.** **Plaintiff's arguments are unavailing.**

**1.** **The plain language of the civil commitment statutes defeats Plaintiff's position.**

Plaintiff's Opening Brief errs in arguing that nothing in Title 36, Chapter 5 limits the provisions in that chapter to the civilly committed. [OB at 19.] He says that Title 36, Chapter 5 broadly applies to "*any* patient by *any* mental health care provider in Arizona at *any* facility." He also cites A.R.S. § 36-501(31), which defines "patient" as someone undergoing "examination, evaluation or behavioral or mental health treatment *under this chapter,*" and A.R.S. § 36-504(A), under which "[e]very person undergoing treatment or evaluation *pursuant to this chapter* is entitled to the rights set forth in this chapter . . . ." [*Id.* (emphases added).]

The problem with that argument, of course, is that Plaintiff ignores the "under this chapter" and "pursuant to this chapter" language. Mr. Contreras was not undergoing "evaluation and treatment *under this chapter* [Title 36, Chapter 5]." He was serving a sentence of incarceration in the custody of the State Hospital under Title 13, Chapter 38. Tellingly, of all the articles and statutes in Title 36, Chapter 5, not one applies to a criminal commitment situation. Every one of the articles and statutes in Title 36, Chapter 5 either specifically addresses non-criminal commitments (*see* Article 3 (Voluntary Admissions), Article 4 (Court-Ordered Evaluations) and Article 5 (Court-Ordered Treatment)), or is plainly inconsistent with criminal commitment, like the statutes in Article 2 ("Patient's Civil and Legal Rights") allowing the civilly committed to vote, to avoid being photographed or fingerprinted, to make and receive confidential telephone calls, and to correspond by mail without censorship.

In response to this point, Plaintiff suggests that the criminally committed could have "some" of the rights in Chapter 36––just not the ones that are inconsistent with criminal commitment. [OB at 18.] This argument not only ignores the statutes' plain language limiting the Chapter 36 rights to those people who are obtaining evaluation and treatment "under this

chapter" or "pursuant to this chapter," but also does nothing more than foment litigation over which civil rights are supposedly consistent with criminal commitment. And in any event, from a practical perspective, there is no logical reason why a criminally committed SMI individual would be entitled to the panoply of rights that are legitimately denied to criminally committed individuals who are non-SMI. Stated differently, the fact that Mr. Contreras happened to be SMI when he committed his crimes does not change the fact that his commitment was made pursuant to the criminal statutes, not the civil statutes and regulations.

### 2. The word "treatment" does not make Plaintiff's case.

Plaintiff then says that Mr. Contreras is entitled to the rights of those who are civilly committed because the criminal statutes use the word "treatment" and Mr. Contreras was to receive treatment while serving his sentence. [OB at 16-17.] The argument does not make his case. The plain language of the Title 36 statutes states that the civil commitment rights are reserved for those who are undergoing treatment "*pursuant to*" the civil commitment statutes. Plaintiff himself argues that the plain language of the statutes must prevail. [*Id*. at 17.] That point defeats his position.

16

Plaintiff asks, if the rights in Title 36, Chapter 5 are limited to those being treated and evaluated "under that chapter," then what rights do the criminally committed have? [*Id.* at 17.] Frankly, it is not our job today to pontificate on what hypothetical rights the criminally committed might or might not have; that is not the issue here. The task in this appeal is to determine whether the civil seclusion statute provides this Plaintiff with a basis for recovery. The district court correctly ruled that it does not according to that statute's plain language. If Plaintiff thinks that the criminally committed need more rights, then he must take his arguments to the legislature, not this Court.

### 3. The word "custody" does not help Plaintiff.

Plaintiff finally argues that Mr. Contreras must be entitled to the rights of the civilly committed because the criminal statutes require the State Hospital to take "custody" of him within ten days of his commitment. [*Id.*] His argument makes no sense. A person who is criminally committed to the State Hospital of course must be surrendered to the hospital's custody: That is where he must serve his sentence. That the hospital takes physical custody of the criminally committed does not establish that the person is legally entitled to the rights of the civilly committed.

17

**C.**    <u>**The civil commitment regulations do not apply.**</u>

Mr. Contreras is similarly not entitled to the rights set forth in the civil commitment <u>regulations</u> — particularly the seclusion regulation that Plaintiff cites in Count Three of his complaint: Ariz. Admin. Code R9-21-204(R) ("No restraint or seclusion shall continue for more than 12 consecutive hours without the review and approval by the medical director or designee of the mental health agency in consultation with the client and relevant staff to discuss and evaluate the needs of the client.").

This regulation is located in the Administrative Code Title 9, Chapter 21, entitled "Arizona Health Care Cost Containment System (AHCCCS) Behavioral Health Services for Persons with Serious Mental Illness." Regulation R9-21-102 ("Applicability") specifically outlines when the entire Chapter 21 applies: *With regard to the provision of behavioral health services or community services to clients under A.R.S. Title 36 Chapter 5*, this Chapter shall apply to the Administration[7] and to all mental health agencies." (Emphasis added). In arguing that "Chapter 21, including Article 2," applies to "all mental health agencies" [OB at 20], Plaintiff again ignores the italicized

---

[7] The "Administration" refers to the Arizona Health Care Cost Containment System (AHCCCS). A.R.S. § 36-2901(1).

language above.  Since Mr. Contreras was not being provided with services under Arizona Revised Statutes Title 36, Chapter 5, the regulations do not apply.  The Court can summarily reject Plaintiff's arguments that he was entitled to the rights set forth in these regulations.

Even if the Court looked further at the regulations, it would see that like the statutes discussed above, they are plainly inconsistent with criminal commitment.  The seclusion provision is located in Article 2, entitled "Civil and Other Legal Rights."  Within Article 2, regulation R9-21-201(A) states that clients have the rights accorded by "applicable law, including but not limited to those prescribed in A.R.S. §§ 36-504 through 36-517.02"—again, the civil commitment statutes.  And regulation R9-21-201(A), like the statutes mentioned above, then sets forth the significant additional rights accorded a civilly committed individual, including the right to hold professional, occupational, or vehicle operator's licenses; the right to vote; the right to make and receive confidential phone calls, and to send and receive uncensored and unopened mail; the right to visit and be visited by others, with the only restriction being to protect the privacy of other clients or to avoid serious disruption; the right to associate with anyone of the client's choosing; and the right to privacy, including the right not to be fingerprinted

19

and photographed without authorization. These are not rights accorded to criminally convicted individuals. Criminally convicted individuals do not retain the right to vote, the right to make and receive confidential phone calls, the right to send and receive uncensored and unopened mail, the right to privacy, or the right not to be fingerprinted or photographed without authorization. *See, e.g., Turner v. Safley*, 482 U.S. 78, 89, 91 (1987) (upholding prison regulation banning inmate-to-inmate correspondence as reasonably related to legitimate penological interests).

In short, Mr. Contreras was not entitled to the rights embodied in the civil commitment regulations. Defendants did not violate any statute or regulation with respect to Mr. Contreras.

### 1. **Plaintiff's arguments lack merit.**

Plaintiff makes two weak arguments for why Mr. Contreras was entitled to the regulatory rights of the civilly committed. Neither has merit. First, Plaintiff says that Article 2 of the AHCCCS regulations provides rights for "clients";[8] that a "Client" under regulation R9-21-101(B) is "an individual

---

[8] *See* Ariz. Admin. Code R9-21-102 ("With regard to the provision of behavioral health services or community services to clients under A.R.S. Title 36 Chapter 5. . . . "); R9-21-201("Clients shall have all rights. . . .").

who has a qualifying serious mental illness and is being evaluated or treated for a mental disorder by or through a health plan"; and (cursorily) that "this includes Isaac while he was at ASH [Arizona State Hospital]." [OB at 19-20.] Not so. Plaintiff's cited sections of the complaint do not support the assertion. [*Id.*, citing ER-24, ¶¶ 30-32.] Nor is the assertion supported by the record. Below, Plaintiff attached a document to his "statement of facts" showing that Mr. Contreras was using "Arizona Complete Health." [Doc. 32, Ex. 3 (Plaintiff omitted this document from his excerpt of record).] "Arizona Complete Health" is a Medicaid provider. *See* https://www.azcompletehealth.com/. Medicaid does not cover individuals required to reside in mental health facilities pursuant to a penal code. 42 U.S.C. § 1396d(a)(30)(A) (defining "medical assistance" to exclude services for any individual who is an inmate of a public institution).

Second, Plaintiff argues that Mr. Contreras was entitled to civil commitment rights because he was in the "custody" of the State Hospital. [OB at 20.] As Plaintiff would have it, as long as a person is physically located at ASH, he has the civil commitment rights laid out in Article 2. [*Id.* at 21.] Again, not so. Chapter 21's plain language restricting all the regulations in that chapter to "the provision of behavioral health services or

community services to clients under A.R.S. Title 36 Chapter 5" defeats the argument. Simply being in the physical custody of the State Hospital does not entitle one to the rights legally reserved to those who are civilly committed under Title 36.

**2.** **The regulations do not apply to the State Hospital in any event.**

Even if the regulations had applied to the criminally committed, they do not apply to the Arizona State Hospital. The regulations in Arizona Administrative Code Title 9, Chapter 21—which AHCCCS promulgated pursuant to A.R.S. § 36-502—interpret Arizona Revised Statutes Title 36, Chapter 5. They do not apply to the Arizona State Hospital because the legislature's grant of authority for AHCCCS to issue regulations expressly excludes the Arizona State Hospital:

> The director [of AHCCCS] shall make rules that include standards for agencies *other than the state hospital* when providing services. . . . The rules shall be applicable to patients admitted to or treated in agencies, *other than the state hospital*, as set forth in this chapter and shall provide for periodic inspections of such agencies.

A.R.S. § 36-502(A) (emphasis added).[9]  While the Arizona State Hospital is certainly free to use processes and procedures outlined in the regulations, the legislature specifically exempted the Arizona State Hospital from being subject to the AHCCCS regulations.

## III.  DEFENDANTS HAVE NOT CONCEDED THAT MR. CONTRERAS WAS ENTITLED TO CIVIL COMMITMENT RIGHTS

### A.  Plaintiff waived any argument involving ASH's "staff rules and regulations" and Annual Report.

For the first time on appeal, Plaintiff argues that in resolving the legal issue at bar, the Court should take judicial notice of and consider the State Hospital's "Medical Staff Rules and Regulations" and its "Annual Report." [OB at 21-22.]  Plaintiff has waived the argument because he neither offered any such documents nor made any arguments relating to them in the district court.  *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) ("We need not

---

[9]  The only portions of Title 9, Chapter 21 that refer specifically to the Arizona State Hospital are the Independent Oversight Committee regulations (Ariz. Admin. Code R9-21-104 through -106), which are promulgated under the authority of a different statute—A.R.S. § 41-3803. Those regulations are not at issue here.

consider Smartt's remaining arguments, which are waived because she raises them for the first time on appeal.").[10]

Even if the Court were to consider the ASH staff rules and regulations, they do not contradict Defendants' position in this case. The rules and regulations do not put any time limitations on seclusion and do not require personal examinations every 15 minutes, nor do they contain any of the detailed rights and obligations found in the civil regulations.[11] They simply note ASH's policy to use seclusion or restraint when a patient poses a serious risk of physical harm and less restrictive alternatives are inadequate. Regardless, Plaintiff did not sue Defendants for violating ASH's internal rules and regulations, nor did Plaintiff allege or argue that these internal policies automatically set the standard of care (and they do not). *Cf. Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 517 (2021).[12]

---

[10] The only document referenced in Plaintiff's complaint—and only vaguely at that—was AHCCCS's response to Mr. Contreras's grievance, discussed in the text below. [*See* ER-26, ¶ 38.]

[11] https://www.azdhs.gov/documents/az-state-hospital/governing-board/medical-staff-rules-and-regs.pdf, at 19.

[12] Likewise, it is irrelevant that the ASH Annual Report states that both civilly and criminally committed persons may file complaints, grievances, and appeals. Granting all committed persons the procedural right to file grievances does not establish any substantive policy, such as granting

24

## B.  **AHCCCS did not officially interpret the regulations Plaintiff's way.**

Plaintiff argues that the State officially interpreted the civil regulations as applying to the criminally committed because years before the events in this case, Mr. Contreras filed a grievance regarding a restraint incident, AHS denied the grievance, Mr. Contreras appealed, and an AHCCCS employee—someone named Kara Burke, who is titled "Unit Chief AHCCCS/OALS/Behavioral Health Grievances and Appeals"—rejected AHS's decision and debated the applicability of the regulations with AHS. [OB at 23-25.]  The argument fails.

First, putting aside for the moment the fact that AHCCCS does not even regulate the Arizona State Hospital, a state employee's citation to regulations in a decision on an inmate's previous grievance appeal does not constitute an official interpretation of the regulations.

> [A] regulatory interpretation must be one actually made by the agency.  In other words, it must be the agency's "authoritative" or "official position," rather than any more ad hoc statement not reflecting the agency's views. . . . .  The interpretation must at least emanate from those actors, using those vehicles, understood to make authoritative policy in the relevant context.

---

criminally committed persons the panoply of rights that the legislature established specifically for the civilly committed.  [OB at 22-23.]

*Kisor v. Wilkie*, 588 U.S. 558, 577 (2019); *accord Landis v. Wash. State Major League Baseball Stadium Pub. Facilities Dist.*, 11 F.4th 1101, 1108 (9th Cir. 2021) (Bumatay, J. concurring) ("[W]e don't defer to interpretations from a mid-level official's speech").  The record is devoid of evidence (or even allegation) that "Kara Burke, Unit Chief AHCCCS/OALS/Behavioral Health Grievances and Appeals" officially speaks for the State on matters of regulatory interpretation or that she was stating some kind of official interpretation of the statutes or regulations when she issued her decision on Plaintiff's old grievance, especially given that AHCCCS does not regulate the State Hospital.  Even if she were doing so, administrative interpretations of statutes are not binding on the Court.  *Maricopa County v. Ariz. Health Care Cost Containment Sys.*, 179 Ariz. 508, 509 (Ct. App. 1994).

Second, the fact that ASH afforded Plaintiff a procedural opportunity to appeal ASH's old grievance decision—*i.e.*, gave him more process than he was due—and completed some kind of paperwork [OB at 26-27][13] does not mandate that the civil regulations' substantive provisions apply to him.  Nor

---

[13]    Defendants continue to maintain their objections to the unauthenticated, hearsay and irrelevant documents that Plaintiff offered below, some of which he cites for this argument.  *See* notes 4, 5, and 6, *supra*.

26

does ASH's conduct preclude Defendants from arguing that the civil rights listed in Arizona Revised Statutes Title 36, Chapter 5, Article 2 or in Arizona Administrative Code Title 9, Chapter 21, Article 2 do not apply to Mr. Contreras as a criminally committed "forensic patient."

In short, Mr. Contreras, convicted of two felonies but found to be insane, was sentenced to serve his incarceration at a secure mental health facility pursuant to A.R.S. §§ 13-502(D) and 13-3994. He was not committed voluntarily, or by application, or by court order pursuant to Title 36, Chapter 5; he was not undergoing evaluation or treatment "pursuant to Title 36, Chapter 5"; and he was not entitled to the civil rights outlined in Title 36, Chapter 5, Article 2. If Plaintiff wanted to pursue a claim arising out of Mr. Contreras's alleged seclusion, then he had the opportunity to pursue a claim under the Constitution and common law, as other convicted persons do. The civil commitment statutes and regulations did not provide him with a basis for doing so.

117370746.1

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court to affirm the judgment in their favor.

RESPECTFULLY SUBMITTED this 7th day of August, 2024.

JONES, SKELTON & HOCHULI P.L.C.

By: /s/ Eileen Dennis GilBride
    Georgia A. Staton
    Ravi V. Patel
    Eileen Dennis GilBride
    40 N. Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Attorneys for Defendants-Appellees

117370746.1

<u>**STATUTORY AUTHORITIES**</u>

**ARIZONA REVISED STATUTES
CRIMINAL COMMITMENT STATUTES**

<u>**Statutes Effective Through Mid-2021**</u>

**Title 13     Criminal Code
Chapter 5  Responsibility**

**A.R.S. § 13-502 (effective 2009-2021)  Insanity test; burden of proof; guilty but insane verdict**

*        *        *

D.  If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received pursuant to   section 13–707 or section 13–751, subsection A or the presumptive sentence the defendant could have received pursuant to 13–702, section 13–703, section 13–704, section 13–705, section 13–706, subsection A, section 13–710 or section 13–1406 if the defendant had not been found insane, and the judge shall sentence the defendant to a term of incarceration in the state department of corrections and shall order the defendant to be placed under the jurisdiction of the psychiatric security review board and committed to a state mental health facility under the department of health services pursuant to section 13–3994 for that term.  In making this determination the court shall not consider the sentence enhancements for prior convictions under section  13–703 or 13–704.  The court shall expressly identify each act that the defendant committed and separately find whether each act involved the death or physical injury of or a substantial threat of death or physical injury to another person.

*        *        *

_____

**Title 13    Criminal Code**
**Chapter 38 Miscellaneous**
**Article 14   Psychiatric Security Review Board**

**A.R.S. § 13-3994 (effective 2014-2021) Commitment; hearing; jurisdiction; definition**

A.    A person who is found guilty except insane pursuant to section 13–502 shall be committed to a secure state mental health facility under the department of health services for a period of treatment.

*       *       *

D. If the court finds that the criminal act of the person committed pursuant to subsection A of this section caused the death or serious physical injury of or the threat of death or serious physical injury to another person, the court shall place the person under the jurisdiction of the psychiatric security review board.  The court shall state the beginning date, length and ending date of the board's jurisdiction over the person.  The length of the board's jurisdiction over the person is equal to the sentence the person could have received pursuant to section 13–707 or section 13–751, subsection A or the presumptive sentence the defendant could have received pursuant to section 13–702, subsection D, section 13–703, section 13–704, section 13–705, section 13–706, subsection A, section 13–710 or section 13–1406.  In making this determination the court shall not consider the sentence enhancements for prior convictions under section 13–703 or 13–704.  The court shall retain jurisdiction of all matters that are not specifically delegated to the psychiatric security review board for the duration of the presumptive sentence.

E. A person who is placed under the jurisdiction of the psychiatric security review board pursuant to subsection D of this section is not eligible for discharge from the board's jurisdiction until the board's jurisdiction over the person expires.

*       *       *

30

K. The procedures for civil commitment govern the continued commitment of the person after the expiration of the jurisdiction of the psychiatric security review board.

\*     \*     \*

_____

## Statutes Effective Mid-2021-2023

**A.R.S. § 13-502 (effective 2021-2023)  Insanity test; burden of proof; guilty but insane verdict**

D.  If the finder of fact finds the defendant guilty except insane, the court shall determine the sentence the defendant could have received pursuant to section 13–707 or section 13–751, subsection A or the presumptive sentence the defendant could have received pursuant to section 13–702, section 13–703, section 13–704, section 13–705, section 13–706, subsection A, section 13–710 or section 13–1406 if the defendant had not been found insane, and the judge shall suspend the sentence and shall order the defendant to be placed under the jurisdiction of the psychiatric security review board and committed to a secure state mental health facility under the department of health services pursuant to section 13–3992 for the length of that sentence.  In making this determination the court shall not consider the sentence enhancements for prior convictions under section 13–703 or 13–704.  The court shall expressly identify each act that the defendant committed and separately find whether each act involved the death or physical injury of or a substantial threat of death or physical injury to another person.

\*     \*     \*

_____

**A.R.S. § 13-3992 (effective 2021-2023) Commitment hearing in superior court; jurisdiction; census data collection; deferral**

A.  A person who is found guilty except insane pursuant to section 13–502 shall be committed to a secure mental health facility for a period of treatment.

31

\*　　\*　　\*

D.  If the court finds that the person's act caused the death of or serious physical injury to or the threat of death or serious physical injury to another person, the court shall place the person under the jurisdiction of the board. The court shall state the beginning date, length and ending date of the board's jurisdiction over the person. The length of jurisdiction over the person is equal to the sentence the person could have received pursuant to section 13–707 or section 13–751, subsection A or the presumptive sentence the person could have received pursuant to section 13–702, subsection D or section 13–703, 13–704 or 13–705, section 13–706, subsection A or section 13–710 or 13–1406.  In making this determination, the court may not consider the sentence enhancements for prior convictions under section 13–703 or 13–704.

\*　　\*　　\*

_____

**A.R.S. § 13-3994 (effective 2021-2023) Persons under the jurisdiction of the psychiatric security review board; hearing; mental health report; risk assessment; conditional release; board notices and decisions**

A.  A person who is placed under the jurisdiction of the board pursuant to this section is not eligible for discharge from the board's jurisdiction until the date that the board's jurisdiction over the person expires as set by the committing court or the person's case is transferred back to the superior court.

\*　　\*　　\*

_____

32

# ARIZONA REVISED STATUTES
# CIVIL COMMITMENT STATUTES

**Title 36 (Public Health and Safety)**
**Chapter 5 (Mental Health Services)**
**Article 2 (Patient's Civil and Legal Rights § 36-504 to § 36-517.02)**

**A.R.S. § 36-504.** **Notice of patients' rights; notification to family**

A. Every person undergoing treatment or evaluation pursuant to this chapter is entitled to the rights set forth in this chapter and to rights that the director specifies by rule. . . .

\*       \*       \*

_____

**A.R.S. § 36-513.** **Seclusion; restraint; treatment**

A person undergoing evaluation pursuant to article 4 of this chapter [Section 36-520 et seq.] shall not be treated for his mental disorder unless he consents to such treatment, except that seclusion and mechanical or pharmacological restraints may be employed in the case of emergency for the safety of the person or others. A person undergoing treatment pursuant to article 5 of this chapter [Section 36-533 et seq.] shall not be subjected to seclusion or mechanical or pharmacological restraints except in case of emergency for the safety of the person or others or as a part of a written plan for the treatment of the patient, prepared by staff members responsible for his care and pursuant to regulations promulgated by the department. All instances of seclusion or restraint shall be properly recorded in the patient's medical record and the use shall be governed by written procedures of the agency caring for the patient and are subject to the rules and regulations of the department.

_____

**A.R.S. § 36-516**.  **Violation of person's rights**

Any knowing violation of a person's rights under this article shall give him a cause of action for the greater of either one thousand dollars or three times the actual amount of damages. . . .

## REGULATORY AUTHORITIES

**Arizona Administrative Code Title 9.  Health Services**

**Chapter 21.   Arizona Health Care Cost Containment System (AHCCCS) – Behavioral Health Services for Persons with Serious Mental Illness**

**R9-21-102   Applicability**

With regard to the provision of behavioral health services or community services to clients under A.R.S. Title 36 Chapter 5, this Chapter shall apply to the Administration and to all mental health agencies.  This Chapter shall not apply to the Arizona Department of Corrections.

———————

**R9-21-201.  Civil and Other Legal Rights**

A.    Clients shall have all rights accorded by applicable law, including but not limited to those prescribed in A.R.S. §§ 36-504 through 36-517.02.  Any individual or agency providing behavioral health services or community services as defined in R9-21-101 shall not abridge these rights, including the following:

1.    Those civil rights set forth in A.R.S. § 36-506;

2.    The right to acquire and dispose of property, to execute instruments, to enter into contractual relationships, to hold professional or occupational or vehicle operator's licenses, unless the client has been adjudicated incompetent or there has been a judicial order or finding that such client is unable to exercise the specific right or category of rights.  In the

case of a client adjudicated incompetent, these rights may be exercised by the client's guardian, in accordance with applicable law;

3.    The right to be free from unlawful discrimination by the Administration or by any mental health agency on the basis of race, creed, religion, sex, sexual preference, age, physical or mental handicap or degree of handicap; provided, however, classifications based on age, sex, category or degree of handicap shall not be considered discriminatory, if based on written criteria of client selection developed by a mental health agency and approved by the Administration as necessary to the safe operation of the mental health agency and in the best interests of the clients involved;

4.    The right to equal access to all existing behavioral health services, community services, and generic services provided by or through the state of Arizona;

5.    The right to religious freedom and practice, without compulsion and according to the preference of the client;

6.    The right to vote, unless under guardianship, including reasonable assistance when desired in registering and voting in a nonpartisan and noncoercive manner;

7.    The right to communicate including:

a. The right to have reasonable access to a telephone and reasonable opportunities to make and receive confidential calls and to have assistance when desired and necessary to implement this right;

b. The unrestricted right to send and receive uncensored and unopened mail, to be provided with stationery and postage in reasonable amounts, and to receive assistance when desired and necessary to implement this right;

8.    The right to be visited and visit with others, provided that reasonable restrictions may be placed on the time and place of the visit but only to protect the privacy of other clients or to avoid serious disruptions in the normal functioning of the mental health agency;

9.    The right to associate with anyone of the client's choosing, to form associations, and to discuss as a group, with those responsible for the program, matters of general interest to the client, provided that these do not result in serious disruptions in the normal functioning of the mental health agency.  Clients shall receive cooperation from the mental health agency if they desire to publicize and hold meetings and clients shall be entitled to

117370746.1

invite visitors to attend and participate in such meetings, provided that they do not result in serious disruptions in the normal functioning of the mental health agency;

10.     The right to privacy, including the right not to be fingerprinted and photographed without authorization, except as provided by A.R.S. § 36-507(2);

11.     The right to be informed, in appropriate language and terms, of client rights;

12.     The right to assert grievances with respect to infringement of these rights, including the right to have such grievances considered in a fair, timely, and impartial procedure, as set forth in Article 4 of this Chapter, and the right not to be retaliated against for filing a grievance;

13.     The right of access to the Office of Human Rights to request assistance in order to understand, exercise, and protect a client's rights;

14.     The right to be assisted by an attorney or designated representative of the client's own choice, including the right to meet in a private area at the program or facility with an attorney or designated representative.  Nothing in this Chapter shall be construed to require the Administration or any mental health agency to pay for the services of an attorney who consults with or represents a client;

15.     The right to exercise all other rights, entitlements, privileges, immunities provided by law, and specifically those rights of consumers of behavioral health services or community services set forth in A.R.S. §§ 36-504 through 36-517.02;

16.     The same civil rights as all other citizens of Arizona, including the right to marry and to obtain a divorce, to have a family, and to live in the community of their choice without constraints upon their independence, except those constraints to which all citizens are subject.

B.     Nothing in this Article shall be interpreted to:

1.     Give the power, right, or authority to any person or mental health agency to authorize sterilization, abortion, or psychosurgery with respect to any client, except as may otherwise be provided by law; or

2.     Restrict the right of physicians, nurses, and emergency medical technicians to render emergency care or treatment in accordance with A.R.S. § 36-512; or

117370746.1

3.     Construe this rule to confer constitutional or statutory rights not already present.

_____

**R9-21-204  Restraint and Seclusion**

A.     A mental health agency shall only use restraint or seclusion to the extent permitted by and in compliance with this Chapter, and other applicable federal or state law.

B.     A mental health agency shall only use restraint or seclusion:

1. To ensure the safety of the client or another individual in an emergency safety situation;

2. After other available less restrictive methods to control the client's behavior have been tried and were unsuccessful;

3. Until the emergency safety situation ceases and the client's safety and the safety of others can be ensured, even if the restraint or seclusion order has not expired; and

4. In a manner that:

a. Prevents physical injury to the client,

b. Minimizes the client's physical discomfort and mental distress, and

c. Complies with the mental health agency's policies and procedures required in subsection (E) and with this Section.

C.     A mental health agency shall not use restraint or seclusion as a means of coercion, discipline, convenience, or retaliation.

\*     \*     \*

I.     An individual who gives an order for restraint or seclusion shall:

\*     \*     \*

4.  If the order is for mechanical restraint or seclusion, limit the order to a period of time not to exceed three hours.

37

\*     \*     \*

P.     A mental health agency shall monitor a client in restraint or seclusion as follows:

1.  The client shall be personally examined at least every 15 minutes for the purpose of ensuring the client's general comfort and safety and determining the client's need for food, fluid, bathing, and access to the toilet.  Personal examinations shall be conducted by staff members with documented training in the appropriate use of restraint and seclusion and who are working under the supervision of a licensed physician, nurse practitioner or registered nurse.

\*     \*     \*

R.     No restraint or seclusion shall continue for more than 12 consecutive hours without the review and approval by the medical director or designee of the mental health agency in consultation with the client and relevant staff to discuss and evaluate the needs of the client.  The review and approval, if any, and the reasons justifying any continued restraint or seclusion shall be documented in the client's record.

\*     \*     \*

_____

38

## STATEMENT OF RELATED CASES
## <u>PURSUANT TO CIRCUIT RULE 28-2.6</u>

### Ninth Circuit Case Number: 24-1806

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** /s/Eileen Dennis GilBride          **Date:** August 7, 2024

39

## <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS</u>

### Ninth Circuit Case Number: 24-1806

I am the attorney or self-represented party.

**This brief contains 5,058 words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** /s/Eileen Dennis GilBride       **Date:** August 7, 2024

40

## <u>CERTIFICATE OF SERVICE FOR ELECTRONIC FILING</u>

### Ninth Circuit Case Number: 24-1806

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

DEFENDANTS/APPELLEES' ANSWERING BRIEF

**Signature**:  /s/Eileen Dennis GilBride          **Date:**  August 7, 2024

117370746.1